

COLLECTIVE BARGAINING AGREEMENT

BETWEEN

**THE CUYAHOGA COUNTY
COURT OF COMMON PLEAS**

**AND**

**FRATERNAL ORDER OF POLICE
OHIO LABOR COUNCIL**

**JANUARY 1, 2017
THROUGH
DECEMBER 31, 2019**

Negotiations – Court Proposal
May 22, 2017

# FOP/OLC/COURT OF COMMON PLEAS
# LABOR AGREEMENT

## TABLE OF CONTENTS

**ARTICLE**                                                                                    **PAGE**

AGREEMENT ------------------------------------------------------------------------1

ARTICLE 1— RECOGNITION ---------------------------------------------------1

ARTICLE 2— NON-DISCRIMINATION -----------------------------------------2

ARTICLE 3— CHECKOFF -------------------------------------------------------3

ARTICLE 4— FAIR SHARE FEE-----------------------------------------------3

ARTICLE 5— MANAGEMENT RIGHTS-----------------------------------------4

ARTICLE 6— NO STRIKE NO LOCKOUT---------------------------------------5

ARTICLE 7— LABOR MANAGEMENT COMMITTEE ------------------------5

ARTICLE 8— GRIEVANCE PROCEDURE---------------------------------------6

ARTICLE 9— SENIORITY -------------------------------------------------------6

ARTICLE 10— HOURS OF WORK AND OVERTIME -------------------------7

ARTICLE 11— WAGES ---------------------------------------------------------7

ARTICLE 12— INSURANCE ----------------------------------------------------8

ARTICLE 13— HOLIDAY OBSERVANCE-------------------------------------8

ARTICLE 14— LEAVES --------------------------------------------------------8

ARTICLE 15— CURRENT PRACTICES----------------------------------------8

ARTICLE 16— HEALTH & SAFETY -------------------------------------------8

ARTICLE 17—-BULLETIN BOARDS--------------------------------------------9

ARTICLE 18—-LAYOFFS--------------------------------------------------------9

 ARTICLE 19 ---FMLA-----------------------------------------------------------10

ARTICLE  20 ---LEAD OFFICER------------------------------------------------11

ARTICLE  21 ---PROBATIONARY PERIOD --------------------------------------12

ARTICLE 22 ----DISCIPLINE PROCEDURE --------------------------------------14

ARTICLE 23 ----TRAINING -----------------------------------------------------14

ARTICLE 24 ----PERFORMANCE EVALUATION PROCEDURE -----------14

ARTICLE 25 ----PERSONNEL FILES -----------------------------------------16

ARTICLE 26 ----FOP REPRESENTATION --------------------------------------17

ARTICLE  27—-DURATION -------------------------------------------------------- 18

APPENDIX A ------------------------------------------------------------------- 19

APPENDIX B ------------------------------------------------------------------- 20

APPENDIX C-------------------------------------------------------------------- 21

Exhibit A. Pg.0003

**AGREEMENT**

**SECTION  1:**   CUYAHOGA  COUNTY  COURT  OF  COMMON  PLEAS,  GENERAL DIVISION  (hereinafter  called  the  "Court")  and  the  FRATERNAL  ORDER  OF POLICE/OHIO LABOR COUNCIL (hereinafter called the "FOP/OLC"), having engaged in  discussions  for  the  purpose  of  establishing  harmonious  employment  relationships, acknowledge that this Agreement is designed to provide a fair and reasonable method by which employees covered by this Agreement can participate through their exclusive bargaining agent in the establishment of terms and conditions of their employment and to establish an orderly procedure for the resolution of differences between the Court and the members of the bargaining unit.

**SECTION 2:**  The Court and FOP/OLC recognize that it is in the best interests of both parties and the public that all dealings between them continue to be characterized by mutual  responsibility  and  respect.  To  insure  that  this  relationship  continues  and matures, the Court and FOP/OLC and their respective representatives at all levels will apply the terms of this Agreement fairly in accordance with its intent and meaning and consistent with the   FOP/OLC's status as exclusive bargaining representative of all employees in the unit.

## ARTICLE 1- RECOGNITION

**SECTION  1:**   The  Court  recognizes  FOP/OLC  as  the  exclusive  representative  for purposes of collective bargaining with respect to matters such as wages, hours, terms or other conditions of employment of employees of the Court in the following bargaining unit.

1

**SECTION 2**:  The bargaining unit shall consist of all regular full-time and regular part-time employees working the classifications or positions of Probation Officer, Clerk Typist, Laboratory Assistant and Laboratory Technologist.

**SECTION 3**:  The FOP/OLC shall be provided an opportunity during new employee orientation to present to new employees information on FOP/OLC. The meeting shall be scheduled by the Court.

**SECTION 4**:  When a new bargaining unit employee is hired, the Court will inform the local FOP/OLC of the person's name, classification, title, work address and work telephone number.

## ARTICLE 2 - NON-DISCRIMINATION

**SECTION 1**:  The provisions of this Agreement shall be applied equally to all employees in the bargaining unit without discrimination based upon age, sex, sexual orientation, genetic information, disability, marital status, race, color, creed, national origin, veteran or disabled veteran status, or union, religious, or political affiliation or non-affiliation. The FOP/OLC shall share equally with the Court the responsibility for applying this provision of the Agreement.

**SECTION 2**:  The Court and the FOP/OLC agree that there shall be no discrimination in any form, including interference, restrain, intimidation or coercion, related to the free exercise of the following rights of bargaining unit members:

(a)     To be a member of the FOP/OLC

(b)     To not become a member of the FOP/OLC

(c)     To provide support to the FOP/OLC.

2

## ARTICLE 3 - CHECKOFF

**SECTION 1:**  The Court will deduct dues levied from the pay of members of the bargaining unit upon receipt from the FOP/OLC of an individually signed authorization card executed by the member for that purpose and bearing the employee's signature. In the event that the authorized monthly deduction amount is to be changed, then the Association/FOP/OLC shall notify the Court in writing at least thirty (30) days prior to the requested effective date of the change.

**SECTION 2:**  An employee shall have the right to revoke such authorization by giving written notice to the Court and FOP/OLC at any time during the last fifteen (15) days of each year. The Court's obligation to make deductions shall terminate automatically upon timely receipt of a revocation of authorization or upon termination of employment or transfer to a job classification outside the bargaining unit.

**SECTION 3:**  All authorized deductions will be made from the member's pay on a regular monthly basis in the first paycheck of the month. All deductions shall be transmitted to the /FOP/OLC no later than the 15th workday following the end of the month in which the deduction is made together with a list of the members of the bargaining unit from whose pay such deductions have been made, and upon receipt the Association/FOP/OLC shall assume full responsibility for the disposition of all funds deducted.

**SECTION 4:**  Such sums deducted from a bargaining unit member's pay, accompanied by a list of bargaining unit members from whose pay they have been deducted and the amount deducted, shall be forwarded to F.O.P./O.L.C., 222 East Town Street, Columbus, Ohio  43215-4611.

**SECTION 5:**  The FOP/OLC shall indemnify and hold the Court, its employees and any of its agents harmless against any and all claims, demands, suits, and other forms of liability that may arise out of, or by reason of actions taken or not taken by the Court and/or FOP/OLC for the purpose of complying with any of the provisions of this Article, or in reliance on any notice or authorization form furnished under any of the provisions of this Article.

## ARTICLE 4 - FAIR SHARE FEE

**SECTION 1:**  All bargaining unit employees, as a condition of employment, shall pay to the Union, through payroll deduction, either union dues or a fair share fee as a contribution toward the administration of this Agreement.

**SECTION 2:**  Any future bargaining unit employee who does not make application for union membership within sixty (60) days after being employed shall, as a condition of employment pay to the Union through payroll deduction a fair share fee as a contribution toward the administration of this Agreement.  Such deductions shall go into effect at the start of the month following the 60th day.

3

**SECTION 3:**  The fair share fee amount shall not exceed the monthly union dues and shall be certified to the Employer by the Treasurer of the Local Union.  The deduction of the fair share fee from any earnings of the employee shall be automatic and does not require authorization for payroll deduction.  Payment to the Union for fair share fees shall be made in accordance with regular dues deduction as provided in Article 5 of this Agreement.

**SECTION 4:**  The Union will indemnify and save the Employer from any action growing out of the deductions made by the Employer hereunder and commenced by an employee against the Employer (or against the Employer and the Union jointly).

**SECTION 5:**  All employees who are not members of the Union shall have all rights and privileges set forth in Ohio Revised Code, Section 4117.09(C) pertaining to political expenditures by the Union.

# ARTICLE 5 - MANAGEMENT RIGHTS

**SECTION 1:**  Unless the Court agrees otherwise in this Agreement, nothing in Chapter

4117 of the Revised Code impairs the rights and responsibilities of the Court to:

1. Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the Court, standards of services, its overall budget, utilization of technology and organizational structure;

2. Direct, supervise, evaluate or hire employees;

3. Maintain and improve the efficiency and effectiveness of its operations;

4. Determine the overall methods, process, means, or personnel by which its operations are to be conducted;

5. Suspend, discipline, demote, or discharge for just cause or layoff, transfer, assign, schedule, promote, or retain employees;

6. Determine the adequacy of the workforce;

7. Determine the overall mission of the Court as a unit of government;

8. Effectively manage the workforce;

9. Take actions to carry out the mission of the Court as a governmental unit.

4

**SECTION 2:**  The Court is not required to bargain on subjects that are not addressed in this Agreement, except as affect wages, hours, terms and conditions of employment. Unless otherwise modified by this Agreement, the parties shall be subject to all rights, protection, and obligations of the Court's Personnel Policies and Procedures Employee Handbook.

**SECTION 3:**  Amendments and modifications of this Agreement may be made during the term of the agreement by mutual written agreement of the parties to this Agreement. When the parties engage in mid-term bargaining, mediation shall be the parties' exclusive impasse resolution process prior to any party declaring final impasse, unless the parties mutually agree in writing to another impasse resolution process.

## ARTICLE 6 - NO STRIKE NO LOCKOUT

**SECTION 1:**  The Court and the FOP/OLC agree that any and all differences arising under this Agreement shall be resolved by peaceful and appropriate means without any interruption of the Court's programs and operations. Specifically, there shall be no strikes, slowdown, blue-flu, picketing, or boycott in any form whatsoever which involve the FOP/OLC, or employees. Moreover, the FOP/OLC further agrees that at no time shall it call or sanction any strike, picketing, slowdown, or any interruption of the normal operations of the Court.

**SECTION 2:**  The Court agrees that during the term of this Agreement it shall not lockout any bargaining unit members covered by this Agreement.

## ARTICLE 7 - LABOR MANAGEMENT COMMITTEE

A Labor/Management Committee shall be established to discuss matters of mutual concern within the Court consisting of an equal number of Court representatives and FOP/OLC representatives. The parties shall meet not less than once every three (3) months, unless otherwise mutually agreed.

## ARTICLE 8 - GRIEVANCE PROCEDURE

**SECTION 1:**  The employees covered by this Agreement shall have access to the same

5

grievance procedure that is included in the Court's Personnel Policies and Procedures Employee Handbook.  In the event the Court modifies or changes the Grievance Procedure, the Court agrees to contact the FOP/OLC in accordance with Article 15, Current Practices.

**SECTION 2:**  In addition to the Grievance Step process as set forth in the Cuyahoga County Common Pleas Court Personnel Policies and Procedures Employees Handbook, as a final, non-binding step, bargaining unit members may submit the grievance to the Court of Appeals, for mediation through the Court of Appeals Administrator.  Such action shall be initiated by submitting written notice to the Common Pleas Court Administrator within thirty (30) days of the Court's written determination on the grievance.

**SECTION 3:**  Oral disciplines are not subject to the grievance procedure.  Written disciplines are only grievable up to the level of the Common Pleas Court Administrator.

## ARTICLE 9 - SENIORITY

**SECTION 1:**  Unless otherwise specifically provided herein, seniority for employees shall be that employee's length of service from the original date of placement in as specific bargaining unit job classification within the bargaining unit.   An employee shall have no seniority for the probationary period, but upon completion of the probationary period, seniority shall be retroactive to the date of hire.

**SECTION 2:**  An Employee who leaves a position in the bargaining unit, but later returns to a position within the bargaining unit, shall have his/her name restored to the seniority list with all seniority held at the time of leaving, but without accumulation during the period of absence from the bargaining unit.

**SECTION 3:** Seniority shall be broken and an employee's employment with the Court shall cease when an employee:

      (a)    Quits or resigns

      (b)    Is discharged for just cause

6

(c)     Is laid off for a continuous period exceeding eighteen (18) months

(d)     Is absent without notice for three (3) consecutive workdays

(e)     Fails to report for work when recalled from layoff within fourteen (14) workdays from the date on which the Court delivers the employee notice via certified mail (to such employee's last known address as shown on the Court's records), unless an employee requests within this fourteen workday period additional time, up to three workdays to report.  Employees are responsible for notifying the Court of any change in their address.

## ARTICLE 10 - HOURS OF WORK AND OVERTIME

**SECTION 1:**  Flex-time:  All bargaining unit employees shall be eligible for any/all flex-time options provided by the Court or established in the Cuyahoga County Common Pleas Court Personnel Policies and Procedures Employees Handbook.  Requests for flex-time shall be considered based on the operational needs of the Court and shall not be unreasonably denied.

**SECTION 2:**  Lunch and Breaks:  All bargaining unit employees shall receive the same lunch and breaks as non-bargaining unit employees as set forth in the Court's Personnel Policies and Procedures Employee Handbook.

**SECTION 3:**  If the Court requires employees to change their regular work hours to work on weekends or on a different shift, it shall first canvass the employees who normally perform the work for volunteers.  If there are insufficient volunteers, the Court shall assign the weekend or off-shift schedule by seniority among the employees who normally perform the work. The least senior employee shall be selected first.

## ARTICLE 11 - WAGES

**SECTION 1:**  A step-system was adopted as set forth in Appendix A.  On the last pay period in December of each calendar year, a singular adjustment shall be made to the step chart.  Employees that achieve at least a "meets expectations" status in all categories of their upcoming job performance evaluation shall be "slotted" into the appropriate step (or steps) as of the maturation date reached in the last pay period of December of that year (specifically December 23, 2017, December 22, 2018, and December 21, 2019).

The COLA percentage increases and the step adjustments will be implemented according to the dates as set forth in Section 2 herein, i.e. the first full pay period in January.

7

**SECTION 2:**  An across the board cost of living increase is not intended to include Step increases or longevity increases based on years in a non-bargaining classification and increases of this kind shall not trigger the agreement stated above.

For 2017, there shall be a COLA wage rate increase of two percent (2%), effective the first full pay period in January 2017 (January 9, 2017), payable on January 27, 2017.

For 2018, there shall be a COLA wage rate increase of two percent (2%), effective the first full pay period in January 2018 (January 8, 2018), payable on January 26, 2018.

For 2019, there shall be a COLA wage rate increase of two percent (2%), effective the first full pay period in January 2019 (January 7, 2019), payable on January 25, 2019.

**SECTION 3:**  Upon written application and prior approval of the Court, employees who perform the services of interpreting or signing shall receive a one thousand dollar ($1,000.00) bi-lingual pay supplement in addition to their basic wage rate for the performance of such services.  As a minimum, in order to qualify for the supplement, employees must perform eight (8) hours of interpreting/signing services within the calendar year.  The Court shall determine who receives a bi-lingual supplement. Interpreting services must be logged and submitted to the Court on a monthly basis.  All logging records and application for supplement must be submitted to the Court for consideration no later than November 15th of the calendar year.  The pay supplement shall be made in a lump sum, payable the first pay day (paycheck) in December.

**SECTION 4:**  Probation Officers shall receive, in addition to other forms of compensation specified herein, their necessary travel and other expenses from their principal place of employment for job responsibilities directly related to employment (*i.e.*, field work).  Request for reimbursement for actual expenses and mileage at the applicable rate shall be obtained via Court-approved process, including submission of appropriate documentation.

# ARTICLE 12 - INSURANCE

All bargaining unit employees shall be provided an opportunity to enroll in any/all Health Insurance options made available by Cuyahoga County to non-bargaining unit employees of the Court.

# ARTICLE 13 - HOLIDAY OBSERVANCE

The Court agrees that all bargaining unit employees shall be eligible for and receive any/all holidays provided by the Court to non-bargaining unit employees.

8

## ARTICLE 14 - LEAVES

**SECTION 1:**  Vacation Leave - The Court agrees that all bargaining unit employees shall be eligible for and receive any/all vacation leaves provided by the Court to non-bargaining unit employees in accordance with the Cuyahoga County Common Pleas Court Personnel Policies and Procedures Employees Handbook.

**SECTION 2:**  Sick Leave -  The Court agrees that all bargaining unit employees shall be eligible for and receive sick leave on the same terms and conditions as provided by the Court to non-bargaining unit employees in accordance with the Cuyahoga County Common Pleas Court Personnel Policies and Procedures Employees Handbook.

**SECTION 3:**  In the event the Court modifies or changes the sick and/or vacation benefits outlined in the Cuyahoga County Common Pleas Court Personnel Policies and Procedures Employees Handbook, the Court agrees to contact the FOP/OLC in accordance with Article 15, Current Practices.

## ARTICLE 15 - CURRENT PRACTICES

Prior to the effective date of a substantive change in the Cuyahoga County Common Pleas Court Personnel Policies and Procedures Employees Handbook that effects terms and conditions of employment, the Court Administrator and/or his designee will provide the Union reasonable opportunity to meet and discuss such change if the Union desires.

## ARTICLE 16 - HEALTH & SAFETY

The Court and FOP/OLC agree that the health and safety of all employees is a matter of the highest importance, and that each will promote and encourage health and safety in

9

all matters, including safe working conditions.  Issues of Health and Safety are appropriate subjects for discussion at Labor/Management Committee meetings.  If the Union desires to have additional employees attend Labor/Management Committee meetings to discuss health and safety issues and provides advance notice, such attendance shall not be unreasonably denied.

## ARTICLE 17 - BULLETIN BOARDS

**SECTION 1**:  The Court shall furnish bulletin boards at locations mutually agreed upon by the FOP/OLC and Court for the exclusive use of the FOP/OLC. The FOP/OLC shall designate representatives who shall be responsible for the posting of notices and shall notify the Court of the identity of those representatives.

**SECTION 2**:  The use of the bulletin board will be for posting notices regarding the business of the FOP/OLC. Notices or announcements shall not contain any statements critical of the Court or any of its employees. The Court Administrator or his or her designee shall notify the President of the FOP/OLC in the event disputed material is posted and such posting shall be immediately removed.

## ARTICLE 18 - LAYOFFS

**SECTION 1**:  When it becomes necessary to reduce the working force of the Court, due to a lack of funds, lack of work, or reorganization for the efficient operation of the Court, bargaining unit employees shall be laid off in the affected classification based upon seniority with the Court, with the least senior employees in the affected classification being laid off first.

**SECTION 2**:  Regular full-time employees shall be given a minimum of fourteen (14) calendar days in advance written notice of layoff indicating the circumstances which

10

make the layoff necessary. At the Union's request, the Employer shall meet and discuss with the Union the necessity of the layoff.

**SECTION 3:**   In the event an employee is laid off, he shall receive payment for earned but unused vacation as quickly as possible, but no later than fourteen (14) days after layoff.

**SECTION 4:**   Unless otherwise determined by the Employer based on operational needs, laid off employees shall be recalled to their former classifications based on seniority, with the most senior employee on the recall list for that classification being recalled first. An employee on layoff will be given fourteen (14) calendar days notice of recall from the date on which the Employer sends the recall notice to the employee, by certified mail, to his last known address (as shown on the Employer's records). Recall rights shall expire eighteen (18) months from the employee's first effective date of layoff.

**SECTION 5:**   While any bargaining unit employees are on layoff status, the Court shall not increase the use of interns for the purpose of performing the work of the laid off bargaining unit employees.

## ARTICLE 19 - FMLA

**SECTION 1:**  The Court agrees to comply with all applicable provisions of the Family Medical Leave Act of 1993 ("FMLA"), and the Americans with Disabilities Act of 1990.

**SECTION 2:**  The Court shall have the right to administer FMLA leave to the full extent permitted by federal law, including, but not limited to, its coordination with any other leaves and other benefits.

## ARTICLE 20 - LEAD OFFICER

**SECTION 1:**  As compensation for additional duties performed by Lead Officers, any bargaining unit members selected as Lead Officers shall receive an annual one-time lump sum payment of  two thousand eighty dollars ($2080.00), payable the first pay day (paycheck) in December, provided that such bargaining unit member served as Lead Officer for a minimum of six (6) months within the calendar year.  For those bargaining unit members who serve as Lead Officers less than six (6) months of the calendar year, such payment will be prorated based upon the number of months served.

**SECTION 2:**  In order to receive Lead Officer compensation, the Lead Officer's evaluation must meet or exceed evaluation criteria in all categories as outlined in the annual Performance Review, including the Supervisor portion.

**SECTION 3:**  Lead Officer compensation shall be paid in a one-time lump sum and shall not affect the base hourly wage rate.

**SECTION 4:**  The total number of Lead Officers shall not exceed fifteen (15) employees.

## ARTICLE 21- PROBATIONARY PERIOD

**SECTION 1:**  Employees entering the bargaining unit, or changing classifications or positions as defined by Article 1, Section 2, are probationary Employees for a period of one hundred eighty (180) days.  The probationary period shall be tolled for absences of more than three (3) consecutive workdays of that Employee during the probationary period.

**SECTION 2:**  The Court shall have sole discretion to discipline or remove such probationary employees, and those actions during the probationary period cannot be reviewed through the grievance procedure.

**SECTION 3:**  A probationary employee shall receive an evaluation by his/her immediate supervisor as soon as possible after the completion of the first half of his/her probationary period.  Each probationary employee shall receive a final probationary evaluation by his/her immediate supervisor before the end of the probationary period.

12

Initial probationary periods may be extended for up to an additional one hundred eighty (180) days at the Court's discretion if the final evaluation indicates unsatisfactory progress. A probationary employee shall be entitled to Union representation with Court Administration if the final evaluation is unsatisfactory and recommends non-retention of the probationary employee.

**SECTION 4:** Probationary employees are not eligible for any merit-based compensation or eligible to use accrued vacation leave during the probationary period, regardless of prior public service.

# ARTICLE 22— DISCIPLINE PROCEDURE

**SECTION 1:** Non-probationary employees covered by this Agreement shall not be disciplined except for just cause and shall have access to the same discipline procedure that is included in the Court's Personnel Policies and Procedures Employee Handbook. In the event the Court modifies or changes the discipline procedure, the Court agrees to contact the FOP/OLC in accordance with Article 15, Current Practices.

# ARTICLE 23— TRAINING

**SECTION 1:** All new hire, mandated, in-service and other general topic training shall be conducted in accordance with the Probation Department's Policy Manual and the usual and customary procedures. However, each employee, upon assignment/transfer to any position shall receive on-the-job training from the employee's immediate supervisor. In the absence of the employee's immediate supervisor, a unit specific supervisor or lead officer shall provide the training. Training shall be documented and maintained in the employee's personnel file. Training shall include all duties, responsibilities, tasks, policies, and procedures specific to the particular unit.

# ARTICLE 24— PERFORMANCE EVALUATION PROCEDURE

**SECTION 1:** Each employee, upon assignment/transfer to any position shall receive a job description specific to that unit, including general job requirements and

13

responsibilities and shall be provided a description or example of factors considered for each category on the performance evaluation.

**SECTION 2:**  Performance evaluations shall be based on an objective appraisal system and shall be completed twice during the probation period:  first evaluation at or near the midpoint of the initial probationary period (180 days) and a subsequent evaluation completed thirty (30) days prior to probationary period end date.   Thereafter, evaluations shall occur on an annual basis. Each performance rating shall include justification for any rating above or below "meets expectations."  Evaluations shall be completed by the Employee's supervisor or other supervisory personnel with full knowledge of the Employee's job description, training, and job performance for the time period under consideration.

**SECTION 3:**  Employees receiving a satisfactory evaluation ("meets expectations" in all categories) may be eligible for "step increases" as specified in Article 11, Section 1.

An employee who receives an unsatisfactory evaluation, shall be provided a Performance Improvement Plan and re-evaluation within six (6) months of the annual evaluation.  The Employer shall provide a list of Employees receiving an unsatisfactory evaluation to the Union no later than January 15th following completion of the evaluation process.  Re-evaluations shall begin no earlier than March 1st and be completed no later than May 31st.  The results of those re-evaluations shall be forwarded to the Union no later than June 15th.

**SECTION 4:**  A supervisor shall notify an employee in writing of substandard performance on the date first known by the supervisor or as soon as practicable.

14

Justification for all ratings below "meets expectations" shall at a minimum be supported by documented evidence of notification of substandard performance and accompanying documented evidence of non-corrected performance.

**SECTION 5:**  Performance evaluations will be based on the Performance Review form in existence at the time of execution of this contract.  If and when the Performance Review form is modified, the Court Administrator and/or his/her designee will provide the Union reasonable opportunity to meet and discuss such change.   Thereafter, performance evaluations will be conducted from the new Performance Review form.

## ARTICLE 25— PERSONNEL FILES

**SECTION 1:**  Personnel files are considered public records as defined by the applicable statute of the Ohio Revised Code.  Bargaining unit members shall have access to and be permitted to review the contents of their personnel files, including any files maintained for the purpose of collecting personal, training, performance evaluation, discipline, attendance and payroll information.

**SECTION 2:**   Personnel files and the contents therein shall be governed by the Court's Personnel Policies and Procedures Employee Handbook.

## ARTICLE 26 – FOP REPRESENTATION

**SECTION 1:**  Non-employee representatives of the FOP/OLC shall be admitted to the Employer's facilities for the purpose of collective bargaining and administering this Agreement.  Such visits shall be made upon providing prior reasonable notice to the Deputy Court Administrator/Director of Human Resources or his/her designee and shall not interfere with the work of any employee or the operations of the Court and/or the

15

Probation Department.

**SECTION 2:**  The FOP/OLC shall designate a bargaining committee comprised of up to five (5) members elected by the union membership for the purposes of aiding the FOP/OLC staff representative in collective bargaining, labor/management committee discussions, and processing grievances.

**SECTION 3:**  Bargaining unit members shall have the right to representation from non-employee representatives of the FOP/OLC and/or one (1) employee/ Steward in pre-disciplinary conferences, disciplinary conferences, or grievance proceeding.  In addition, upon request, bargaining unit members have the right to representation at investigatory interviews if the bargaining unit member has reasonable grounds to believe that the interview may be used to support disciplinary action against that member.  Union Stewards will not represent employees from their unit.  If FOP representative and non-unit Steward are not available at the scheduled time, the Employer agrees to reschedule the conference or proceeding.

Exhibit A. Pg.0019

# ARTICLE 27 - DURATION

It is mutually agreed and understood that this Agreement remains in full force and effect in accordance to its terms and conditions until December 31, 2019.  A meeting between the parties will be held no later than thirty (30) days prior to the termination date of this Agreement to determine future arrangements.  By signing below, the parties cause this Agreement to become effective January 1, 2017.

**For the Court:**                                      **For the Union:**


_____                      _____
John J. Russo                                        Chuck Aliff
Administrative and Presiding Judge           FOP/OLC Staff Representative


_____                      _____
Greg Popovich                                        Erricka Grays
Court Administrator

                                                             _____
                                                             Kenya Gray

**For the County:**
                                                             _____
                                                             Michelle Hoiseth


_____                      _____
Armond Budish                                       Michael Cain
County Executive

                                                             _____
                                                             Sarah Tuggey


Approved as to legal form and correctness:


_____
Nora L. Hurley
Deputy Chief Assistant Director of Law

17

# APPENDIX A

| Probation Officer & Laboratory Technologist Step Structure | | | | |
|---|---|---|---|---|
| | | | | |
| Service | Current | 2% Rate Effective 1/9/2017 | 2% Rate Effective 1/8/2018 | 2% Rate Effective 1/7/2019 |
| 0 < 2 years | $38,956.32 | $  39,735.54 | $  40,530.36 | $  41,341.04 |
| 2 < 5 years | $42,488.68 | $  43,338.36 | $  44,205.20 | $  45,089.20 |
| 5 < 10 years | $46,020.00 | $  46,940.40 | $  47,879.26 | $  48,836.84 |
| 10 < 15 years | $53,109.42 | $  54,171.52 | $  55,254.94 | $  56,359.94 |
| 15 < 16 years | $57,273.58 | $  58,419.14 | $  59,587.58 | $  60,779.42 |
| 16 or more years | $61,438.00 | $  62,666.76 | $  63,920.22 | $  65,198.64 |

| Clerk Typist and Laboratory Assistant Step Structure | | | | |
|---|---|---|---|---|
| | | | | |
| Service | Current | 2% Rate Effective 1/9/2017 | 2% Rate Effective 1/8/2018 | 2% Rate Effective 1/7/2019 |
| 0 < 4 years | $29,366.48 | $  29,953.82 | $  30,552.86 | $  31,163.86 |
| 4 < 9 years | $32,100.38 | $  32,742.32 | $  33,397.26 | $  34,065.20 |
| 9 or more years | $41,009.80 | $  41,830.10 | $  42,666.78 | $  43,520.10 |

Exhibit A. Pg.0021

# APPENDIX B

**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**CUYAHOGA COUNTY COURT OF COMMON PLEAS**

**AND**

**FRATERNAL ORDER OF POLICE**
**OHIO LABOR COUNCIL**

**PERSONAL LEAVE**

The above referenced parties recently completed a three year successor contract negotiations that shall amend the labor agreement which is in effect for the period from January 1, 2017 through December 31, 2019.   This memorandum of understanding shall be effective upon ratification of the Collective Bargaining Agreement by both parties and shall terminate on December 31, 2019.

Each bargaining unit member shall receive two (2) personal days to be used during calendar year 2017 and two (2) personal days to be used during calendar years 2018 and 2019.  Said days shall be only used in no less than eight (8) hour increments and cannot be carried over into a subsequent year.  In order to utilize these personal days each bargaining unit member is required to provide his/her supervisor with a minimum of forty eight (48) hours notice, unless otherwise agreed to by the bargaining unit member and supervisor.  Personal days are not eligible for cash out.

19

# APPENDIX C

**MEMORANDUM OF UNDERSTANDING**
**BETWEEN**
**CUYAHOGA COUNTY COURT OF COMMON PLEAS, GENERAL DIVISION**
**AND**
**FRATERNAL ORDER OF POLICE**
**OHIO LABOR COUNCIL**

## RE:  MERIT BASED STEP INCREASE

In an effort to clarify the merit based Step Increase process as identified in Article 11, Section 1, an employee that does not achieve at least a "meets expectations" status in all categories of their job performance evaluation will have the opportunity to undergo a re-evaluation within six (6) months of the date of the last evaluation.

Upon re-evaluation, if the employee has achieved at least a "meets expectations" in all categories of their job performance evaluation, then the Step Increase will be applied. In addition, at any time prior to the six (6) month re-evaluation, the employee may request to meet with the Human Resource Director to discuss and review the performance evaluation with the employee and his or her supervisor.  After meeting with the Human Resources Director, the employee may submit a written request to meet with the Court Administrator to discuss the job performance evaluation.

In the event that the Court revises the current performance evaluation process and/or standards, a "meets expectations" or its equivalent will be maintained and utilized for purposes of job performance evaluation.  The parties agree that a labor management meeting will be conducted prior to implementation of any anticipated changes in current performance evaluation process and/or standards.

Prior to the next job performance evaluation, the Court will complete specialized training for all supervisors relative to performance evaluations.

Exhibit A. Pg.0023