IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KIMBERLEE WARREN,** | CASE NO. 1:21-cv-01655-PAB |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **FRATERNAL ORDER OF POLICE, OHIO LABOR COUNCIL, INC.,** | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Currently pending is Defendant Fraternal Order of Police, Ohio Labor Council, Inc.'s ("the FOP") Motion to Dismiss Plaintiff's Complaint ("Defendant's Motion"). (Doc. No. 5.) Plaintiff Kimberlee Warren filed an Opposition to Defendant's Motion on October 8, 2021, to which Defendant replied on October 19, 2021. (Doc. Nos. 6, 10.) For the following reasons, Defendant's Motion to Dismiss is denied.

**I.     Background**

Warren has worked as a Cuyahoga County probation officer since 1990. (Doc. No. 1, ¶ 6.) Warren has worked for the County in a bargaining unit represented exclusively by the FOP since 2013. (*Id.*) Warren has never been an FOP member, nor has she ever signed a dues deduction authorization form consenting to the collection of union dues or fees from her wages. (*Id.* at ¶ 7.) However, from 2017 through 2020, the FOP and the County were parties to a collective bargaining agreement that required nonunion members, including Warren, to pay fees to the FOP. (*Id.* at ¶ 8-9.) According to the CBA, "[a]ll bargaining unit employees, as a condition of employment, shall pay to the Union, through payroll deduction, either union dues or a fair share fee as a contribution toward the administration of" the CBA. (*Id.*; *see also* Collective Bargaining Agreement, Doc. No. 1-1,

PageID# 13.) The CBA further provides that "[t]he deduction of the fair share fee from any earnings of the employee shall be automatic and does not require authorization for payroll deduction." (*Id.*) Thus, the County automatically deducted Warren's fair share fees from her wages pursuant to the CBA and transmitted those fees to the FOP. (*Id.*)

On June 27, 2018, the Supreme Court issued its decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018). (*Id.* at ¶ 10.) In *Janus*, the Supreme Court held that public employees who are represented by a union but do not belong to that union cannot be required to pay fair share fees to cover the union's collective bargaining costs, and that the state and unions must obtain a nonmember employee's affirmative consent before deducting and collecting union dues. (*Id.*) Warren alleges that the County continued to deduct, and the FOP continued to collect, fees from Warren's wages after June 27, 2018 without her affirmative consent, in contravention of *Janus*. (*Id.* at ¶ 11.)

According to Warren, in November 2020, she "discovered that she no longer was required to pay union dues or fees to FOP as a condition of employment." (*Id.* at ¶ 12.) On November 16, 2020, Warren requested that the County stop deducting union fees from her wages and requested reimbursement for the fees deducted from her wages after August 2018 through November 2020. (*Id.*) On December 7, 2020, the FOP notified Warren that it would stop treating her as a union member. (*Id.* at ¶ 15.) In December 2020, the County stopped deducting union fees from Warren's wages. (*Id.* at ¶ 16.) On or about December 7, 2020, the FOP notified Warren that it would stop treating her as a union member. (*Id.* at ¶ 15.) On information and belief, the FOP and the County stopped taking union dues or fees from Warren's wages in December 2020. (*Id.* at ¶ 16.) On or about February 8, 2021, the County again notified the FOP that union dues or fees had been taken from Warren in error by the County and remitted to the FOP, and that she should be reimbursed for these

monetary exactions. (*Id.* at ¶ 17.) On or about February 19, 2021, the FOP responded to the County's request and refused to reimburse Warren for the union dues or fees it had exacted. (*Id.* at ¶ 18.) On May 24, 2021, Warren sent, by certified mail, a letter requesting that the FOP provide her with any dues deduction authorization that she might have signed. (*Id.* at ¶ 19.) In response, on June 10, 2021, the FOP sent a letter to Warren stating, in part, that:

> Prior to May 2019, a fair share fee was deducted from your paycheck which did not require a signed authorization. In May 2019, the Employer converted you to a membership dues deduction. Despite the fact that the dues deductions were clearly reflected on your check stubs, you did not request to stop membership dues until December 2020.[1]

(*Id.* at ¶¶ 17-20.)

Warren filed the instant Complaint on August 25, 2021. (Doc. No. 1.) Warren brings a single claim under 42 U.S.C. § 1983 against the FOP. Warren alleges that the FOP violated her First Amendment rights to free speech and association when it collected and retained union dues or fees from Warren's wages without her affirmative consent. (*Id.* at ¶¶ 25-26.) The FOP filed its Motion to Dismiss on September 8, 2021. (Doc. No. 5.) Warren filed her Opposition on October 8, 2021, to which the FOP replied on October 19, 2021. (Doc. Nos. 6, 10.) Thus, the FOP's Motion is now ripe for a decision.

---

[1] It is unclear why the FOP believed that it did not need Warren's affirmative authorization to deduct the fair share fee for the time between when *Janus* was issued and May 2019. (Doc. No. 1, ¶ 20.) It is also unclear why the County converted Warren to a "membership dues deduction" in May 2019. Warren alleges that she has never been a member of the FOP, but the County's conversion of Warren to a "membership dues deduction" suggests that Warren may have been a member of the FOP at some point between May 2019 and November 2020. (*Id.*) However, neither party addresses why the County converted Warren to a "membership dues deduction," and, at any rate, Warren alleges that she never joined the FOP, so the Court accepts her allegation as true.

**II.     Standard of Review**

The FOP moves to dismiss Warren's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific

facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

**III.   Analysis**

The FOP argues that Warren fails to set forth a cognizable claim under § 1983 because she cannot establish that the FOP, a private entity, acted under color of state law. (Doc. No. 5, PageID# 55.) Specifically, the FOP argues that Warren cannot demonstrate under the symbiotic relationship/nexus test that the state was "intimately involved in the [FOP's] challenged private conduct" such that the conduct could be fairly attributed to the state. (*Id.*) The FOP argues that it is a private labor union and such organizations generally are not state actors for purposes of § 1983. (*Id.* at PageID# 56.) The FOP further argues that *Janus* never held that unions were violating the Constitution, only that the state statutes authorizing agency-shop arrangements were unconstitutional. (*Id.* at PageID# 56-57.) Further, according to the FOP, it is irrelevant that the state withheld certain fees from Warren's wages pursuant to a contract with the FOP because the mere existence of a contract between a public and a private entity does not transform the private entity into a state actor. (*Id.* at PageID# 57.) While the FOP acknowledges that a private actor may act under color of state law if it "is a willful participant in joint activity" with the state, the FOP asserts that Warren offers no more than a conclusory allegation that the FOP and the state engaged in joint activity. (*Id.* at PageID# 58.) Finally, the FOP cites to a bevy of federal district and appellate cases from outside this Circuit

to support its assertion that "unions receiving dues post-*Janus* are not state actors so there is no federal claim under [§] 1983." (*Id.*)

In her Opposition, Warren argues that the FOP's motion should be dismissed because the FOP acted under color of state law when it jointly participated with the state to seize agency fees from Warren's wages without her consent post-*Janus*. (Doc. No. 6, PageID# 64.) Warren argues that *Janus* itself made clear that "[s]tates and *public-sector unions* may no longer extract agency fees from nonconsenting employees." (*Id.* at PageID# 65.) Warren argues that the FOP and the County entered into a collective bargaining agreement in which they jointly agreed that the County would deduct, and the FOP would receive, agency fees from nonconsenting employees like Warren. (*Id.*) Warren argues this arrangement is exactly the type of state action that *Janus* held was unconstitutional. (*Id.*) According to Warren, the FOP's joint participation with the County in deducting fees and/or dues from Warren's wages pursuant to the CBA renders the FOP a state actor under § 1983. (*Id.* at PageID# 67.) Warren further argues that, after the Supreme Court remanded *Janus* ("*Janus II*"), the Seventh Circuit concluded that a union acts under color of state law "when it acts in concert with a governmental entity to deduct and collect union payments from dissenting, nonunion employees." (*Id.* at PageID# 66, citing *Janus v. AFSCME Council 31*, 942 F.3d 352, 361 (7th Cir. 2019). Warren urges this Court to apply *Janus II*'s reasoning here. (*Id.*) Warren further argues that the FOP's cited post-*Janus* cases are inapposite because those cases involved union members who attempted to renege on private contracts with the unions in which the members agreed to pay dues to the union, whereas in the instant case, Warren never signed any FOP membership agreement or consented to dues deductions. (*Id.* at PageID# 69-70.)

To maintain a claim under 42 U.S.C. § 1983, Warren must establish that she was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cty. Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140. Here, there is no dispute that Warren alleges that her First Amendment rights to free speech and association were infringed upon by the FOP. As such, the only remaining question is whether the FOP, a private labor union, acted under color of state law when it retained union fees from Warren's wages that the County collected without her consent post-*Janus*.

A court decides whether a defendant acted under color of state law by using a two-part test established in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). First, the court asks, "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Id.* Second, the court asks whether defendants "may be appropriately characterized as 'state actors.'" *Id.* State action occurs when both questions are answered in the affirmative. *Id.* at 937-39. The parties' dispute centers on the second part of this test, whether the FOP's conduct may be fairly attributed to the state.

The Sixth Circuit has recognized up to four tests to determine whether a private party's "challenged conduct is attributable to the state: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (noting that precedent often enumerates three tests, but more

recent Sixth Circuit cases include separate discussions on the entwinement test), citing *Vistein v. Am. Registry of Radiologic Technologists*, 342 Fed. Appx. 113, 127 (6th Cir. 2009) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298, (2001)).

> According to the Sixth Circuit, under the nexus test,
>
> "[T]he action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. The cases establish no clear standard for identifying a "sufficiently close nexus." Rather, the Supreme Court reminds us that "readily applicable formulae may not be fashioned" for finding state action in civil rights cases; such a finding "can be determined only in the framework of the peculiar facts or circumstances present." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *see also Lugar*, 457 U.S. 922, 939, 102 S.Ct. 2744 (calling the state action determination a "necessarily fact-bound inquiry").

*Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000).

Ultimately, while the Sixth Circuit has developed multiple tests for assessing whether a private entity is a state actor, "the Supreme Court has made clear that all of our various 'criteria' boil down to a core question: whether there is such a 'close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 676 (6th Cir. 2018) (quoting *Brentwood Acad.*, 531 U.S. at 295, internal quotation omitted).

Labor unions are generally considered private parties, not government actors. *Moore v. Int'l Bhd. of Elec. Workers Local 8*, 76 Fed. App'x 82, 83 (6th Cir. 2003) (affirming district court's dismissal of § 1983 claim against union because the union was not a state actor); *Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998) ("In general, a union is not a state actor."); *Parker v. Nat'l Assoc. of Letter Carriers, AFL-CIO*, No. 19-12915, 2020 WL 3121175, at *7 (E.D. Mich. June 12, 2020)

8

(noting that it is a "well-established general rule that a labor union . . . is generally considered a private party"). Moreover, union actions taken pursuant to a union's own internal governing rules are not state actions. *Messman*, 133 F.3d at 1044.

However, in a few, limited instances, courts have determined that some actions undertaken by unions have been done under the color of state law. In *Hudson v. Chicago Teachers Union Local No. 1*, a group of nonunion employees challenged the constitutionality of a union's procedure for determining the proportionate fair share fees that nonunion employees must pay to support the union's collective bargaining efforts. *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187 (7th Cir. 1984), *aff'd*, 475 U.S. 292 (1986). The nonunion employees brought their challenge against the union pursuant to § 1983. *Id.* at 1190. The Seventh Circuit held that "when a public employer assists a union in coercing public employees to finance political activities, that is state action; and when a private entity such as a union acts in concert with a public agency to deprive people of their federal constitutional rights, it is liable under section 1983 along with the agency." *Id.* at 1191. Thus, the Seventh Circuit concluded that the nonunion employees could proceed under § 1983 against the union, a private entity, as it had deprived the nonunion employees of certain constitutional rights, under the color of state law, without due process of law. *Id.*

Relatedly, in *Bain v. California Teachers Association*, a district court considered a § 1983 challenge brought against private unions by dues-paying union members, who alleged that they were "effectively compelled" to relinquish their First Amendment rights not to speak because they were unable to enjoy certain members-only benefits without also paying non-chargeable union dues, *i.e.*, dues that funded the unions' political activities/advocacy rather than the expenses associated with collective bargaining. *Bain v. California Teachers Assoc.*, No. 2:15-cv-02465-SVW-AJW, 2016 WL

9

6804921, at *1 (C.D. Cal. May 2, 2016). The court rejected the union members' argument that the unions were state actors because the unions were parties to collective bargaining agreements with the state. *Id.* at *7. The court concluded that "[t]he government's ministerial obligation to deduct dues for members and agency fees for nonmembers under a collective bargaining agreement does not transform decisions about membership requirements into state actions." *Id.* However, the court also observed that ""[t]here is, of course, state action with respect to the directly compelled 'chargeable' fees." *Id.* at n.14 (citing *Hudson*, 743 F.2d at 1190-91). Thus, *Bain* recognized a clear distinction between internal union decisions, actions that are not attributable to the state, and unions' collection of compelled chargeable fees (*i.e.*, fair share fees), action that *is* attributable to the state. *Id.*

Post-*Janus*, a few courts, under limited circumstances, found that unions acted under color of state law when they accepted agency/fair share fees collected by the state from nonunion members' wages. After the Supreme Court remanded *Janus*, the Seventh Circuit in *Janus II* concluded that the union was a proper defendant under § 1983 because it acted under color of state law when it collected fair share fees withheld from nonmembers' wages:

> A "procedural scheme created by ... statute obviously is the product of state action" and "properly may be addressed in a section 1983 action." *Id.* at 941, 102 S.Ct. 2744. "[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); see also *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992). Here, AFSCME was a joint participant with the state in the agency-fee arrangement. CMS deducted fair-share fees from the employees' paychecks and transferred that money to the union, which then spent it on authorized labor-management activities pursuant to the collective bargaining `agreement. This is sufficient for the union's conduct to amount to state action. We therefore conclude that AFSCME is a proper defendant under section 1983.

*Janus II*, 942 F.3d at 361.

Likewise, in *Wenzig v. Service Employees Int'l Union Local 668*, the district court concluded that the union was a state actor. *Wenzig v. Service Employees Int'l Union Local 668*, 426 F. Supp. 3d 88, 93 n.5 (M.D. Pa. 2019), *aff'd*, 972 F.3d 262. In *Wenzig*, the plaintiffs were public employees represented by a union for purposes of collective bargaining but were not union members and did not pay union dues. *Id.* at 90. Instead, as nonmembers, the plaintiffs paid only fair share fees to the union. *Id.* After the Supreme Court issued its decision in *Janus*, the *Wenzig* plaintiffs brought a § 1983 claim against the union, arguing that the union violated their First Amendment rights by requiring fair share fees and seeking repayment of all fair share fees paid to the union prior to *Janus*. *Id.* at 91-92. According to the court, though the union did not argue "that it was not acting 'under color of state law', since plaintiffs are proceeding under § 1983, SEIU must be considered a state actor." *Id.* at 93 n.5. The court relied on *Janus II* to conclude that the union was a state actor because it was a joint participant with the state in the agency-fee arrangement. *Id.*

The Court concludes that Warren has sufficiently alleged that the FOP's actions can be attributed to the state and, therefore, the FOP acted under color of state law. According to Warren's Complaint, the County and the FOP acted in tandem under their pre-*Janus* agency-shop arrangement for more than *two years* after *Janus* invalidated such arrangements. (Doc. No. 1, ¶¶ 8-12.) In other words, the FOP and the County allegedly engaged in up to 28 unconstitutional seizures of Warren's pay. The Court concludes that this demonstrates a sufficiently close nexus between the FOP and the County such that the FOP's seizures can be fairly attributed to the state itself. The FOP was only able to effectuate these alleged repeated seizures of Warren's wages because the County continued to adhere to an unconstitutional agency-shop arrangement. Thus, for two years, the FOP allegedly acted in concert with the County to deprive Warren of her First Amendment right to be free from

compelled speech. *See Hudson*, 743 F.2d at 1190-91. The Court is persuaded that, in this particular context, Warren has alleged a sufficiently close nexus between the FOP and the County and, therefore, adequately alleged that the FOP acted under color of state law. *Id.*; *see also Janus II*, 942 F.3d at 361; *Wenzig*, 426 F. Supp. 3d at 93 n.5.

The Court does not find that the FOP is a state actor based solely on the existence of its CBA with the County. (Doc. No. 5, PageID# 57.) Rather, the Court concludes that the FOP acted under color of state law because, between July 2018 and November 2020, the County repeatedly withheld, and the FOP repeatedly collected, portions of Warren's wages without her consent, despite clear Supreme Court authority that such automatic deductions were unconstitutional. *See Janus*, 138 S. Ct. at 2460; *see also, e.g., Tulsa Prof. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988) ("[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found."); *Lugar*, 457 U.S. 922 (1982). It is not simply that the FOP and the County had a contract that renders the FOP a state actor here, but that the FOP repeatedly made use of the County's automatic withholding procedures to seize portions of Warren's wages for more than two years after such arrangements were determined to be unconstitutional, as though *Janus* had never been decided in the first place. Moreover, as discussed above, the *Janus II* and *Wenzig* courts each concluded that unions act under color of state law when they collect agency fees automatically deducted by public employers from public employees' pay. Thus, the Court is persuaded that, at this early stage in the proceedings, Warren has alleged that the FOP acted under color of state law.

The Court also disagrees with the FOP's suggestion that it cannot be a state actor because while "Ohio law once authorized government employers to require payment of fair-share fees if employees unionized and negotiated to have payment of fees become a condition of employment . . .

*Janus* invalidated these laws and agreements." (Doc. No. 5, PageID# 56.) The Court agrees with the FOP's assertion that *Janus* invalidated Ohio's agency-shop statutory scheme. Indeed, with this acknowledgment, the FOP knew or should have known that it should not be taking nonmember agency fees post-*Janus* because *Janus* invalidated such agency-shop arrangements as of June 27, 2018. Yet, the FOP utilized the County to continue to seize part of Warren's wages without authorization and outside any statutory framework, and the FOP continued to accept these "union dues or fees" without Warren's affirmative consent, for more than *two years*.[2] (Doc. No. 1, ¶¶ 8-12.) That the FOP worked in concert with the County to accept this financial benefit for over two years is particularly problematic, because such agency fees impermissibly compelled Warren's speech and, therefore, were inconsistent with the First Amendment. *See Janus*, 138 S. Ct. 2460. Thus, as alleged, the FOP acted in concert with the County to deprive Warren of her First Amendment rights and is liable under § 1983. *See Hudson*, 743 F.3d at 1191.

The Court is also not persuaded by the FOP's assertion that unions are generally not treated as state actors under § 1983. (Doc. No. 5, PageID# 56.) Although rare, some cases, including *Hudson*, *Janus II*, and *Wenzig* demonstrate that under certain limited circumstances, private unions may be treated as state actors and subject to suit under § 1983. *See supra*. Indeed, the situation described in Warren's Complaint is nearly identical to those described in *Janus II* and *Wenzig*.

---

[2] Neither party cited, and the Court could not find, any cases in which a state and union proceeded to withhold and collect nonmember agency fees for so long post-*Janus*. Many *Janus*-related cases note that unions "immediately ceased collecting such fees" after the Supreme Court issued *Janus*. *See, e.g., Lee v. Ohio Educ. Assoc.*, 366 F. Supp. 3d 980, 982 (N.D. Ohio 2019), *aff'd* 951 F.3d 386 (6th Cir. 2020); *Wenzig*, 426 F. Supp. 3d at 92 ("[A]fter the *Janus* decision SEIU stopped receiving fair-share fees from non-members, including plaintiffs."). The Court located one case in which a union continued to receive post-*Janus* agency fees from a nonunion member, *Campos v. Fresno Deputy Sheriff's Assoc.* In *Campos*, the public employer mistakenly withheld, and the union accepted, agency fees from a nonunion member's wages until July 30, 2018. *Campos v. Fresno Deputy Sheriff's Assoc.*, 441 F. Supp. 3d 945, 954 (E.D. Cal. 2020). The *Campos* court dismissed the nonunion member's § 1983 claim against the union as moot because the union refunded the plaintiff for his one month of post-*Janus* fees, plus interest. *Id.*

The sole argument the FOP offers as to why the Court should disregard *Janus II*'s conclusion that the union acted under color of state law is its assertion in a footnote in its Reply that this conclusion was mere "dicta." (Doc. No. 10, PageID# 85.) The Court disagrees that the Seventh's Circuit's conclusion was dicta. In *Janus II*, the Seventh Circuit explicitly concluded that the union's conduct in accepting fair share fees from nonmembers amounted to state action and, therefore, was a proper defendant under section 1983. *Janus II*, 942 F.3d at 361. Thus, by its own language, the Seventh Circuit did not apparently view this conclusion as dicta only. Additionally, the court's conclusion that the union acted under color of state law was pivotal to the central issue in *Janus II*: whether a private union could assert a good-faith defense under § 1983 to liability for agency fee payments collected pre-*Janus*. *Id.* at 364. Although "a private party *acting under color of state law* does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983." *Id.* at 362 (emphasis added). The court concluded that the union could assert a good-faith defense to the plaintiff's § 1983 lawsuit. *Id.* at 366. It stands to reason that if the union had not acted under color of state law, it would not have been entitled to assert § 1983's good-faith defense, a defense reserved only for private parties acting under color of state law. *Id.* at 364.

Even if this conclusion *was* dicta, as the FOP argues, the Court may still consider it persuasive. *See* Obiter Dictum, Black's Law Dictionary (11th ed. 2019) (defining obiter dictum as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)"). *Janus II*'s conclusion that the union acted under color of state law when it accepted agency fees withheld by the state from a nonmember's wages is persuasive because the instant case arises from a similar situation, namely that a union made use of state procedures with the overt assistance of a state agency to

14

withhold fair share fees, without employees' consent, and transfer those funds to the union. *Janus II*, 942 F.3d at 361.

The Court also concludes that the FOP's cited cases are inapposite. (*See* Doc. No. 5, PageID# 58-61.) The FOP's cited cases all address a different factual scenario than the instant case. Broadly, the FOP's cites cases in which union members attempted to withdraw their union memberships and recoup union dues, *not* agency fees, after *Janus*. *See, e.g., Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020); *Kurk v. Los Rios Classified Emp. Ass'n*, 540 F. Supp. 3d 973 (E.D. Cal. 2021). Indeed, in *Belgau*, the Ninth Circuit distinguished *Janus*, where nonunion members' speech was compelled through mandatory agency/fair share fees, from the case before it, where union members agreed via a private contract with their unions to pay union dues for a set period:

> *Janus* does not address this financial burden of union membership. The Court explicitly cabined the reach of *Janus* by explaining that the "[s]tates can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." 138 S. Ct. at 2485 n.27. Nor did *Janus* recognize members' right to pay nothing to the union. The Court "was not concerned in the abstract with the deduction of money from employees' paychecks pursuant to an employment contract" nor did it give "an unqualified constitutional right to accept the benefits of union representation without paying." *Janus II*, 942 F.3d at 357-58. We join the swelling chorus of courts recognizing that *Janus* does not extend a First Amendment right to avoid paying union dues.

*Belgau*, 975 F.3d at 950-51. Further, the *Belgau* court noted that its conclusion that the union was not a state actor when it collected union dues "[did] not implicate the Seventh Circuit's analysis on the collection of *agency fees*." *Id.* at 948 (emphasis added) (citing *Janus II*, 942 F.3d at 361). Thus, *Belgau* and its progeny explicitly addressed a different factual scenario than in the instant case and are not relevant to determining whether the FOP acted under color of state law when it allegedly continued to seize Warren's wages. Unlike the plaintiffs in *Belgau* and the FOP's other cited cases, Warren alleges that she was never a union member, never signed a private union membership

15

contract, and never affirmatively consented to pay any agency fees or dues post-*Janus*, yet, for more than two years, the FOP repeatedly utilized the County's withholdings system to seize agency fees from Warren after the Supreme Court issued *Janus*. (*See* Doc. No. 1, ¶¶ 14-20.) Thus, under these specific and unusual circumstances, the Court concludes that the FOP acted under color of state law when it repeatedly seized Warren's wages, without her consent, post-*Janus*.

Accordingly, the Court concludes that, at this juncture, Warren has sufficiently pleaded that the FOP acted under color of state law when it continued to collect agency fees from Warren's wages post-*Janus*.

## IV. Conclusion

For the reasons set forth above, the FOP's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

Date: March 23, 2022

     *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE